35441, 35442.   TRIBBLE *v.* GEORGIA POWER COMPANY
*et al.;* and *vice versa.*

DECIDED FEBRUARY 7, 1955—REHEARING DENIED FEBRUARY 28, 1955.

*Martin, Snow & Grant,* for plaintiff in error.
*Miller, Miller & Miller, Grady Gillon,* contra.

NICHOLS, J. Ordinances in question of the City of Macon provide: "82-917. Emergency right of way. When in performance of emergency duty the following vehicles shall have the right of way: Fire, fire patrol, ambulance and police. A vehicle on the approach of any of the vehicles named in the preceding section shall immediately draw parallel to and as near the curb as possible, and stop until said vehicles have passed by. 82-1008. Application of speed limitations to emergency vehicles. Speed limitations set forth in the ordinances of the City of Macon shall not apply to authorized emergency vehicles when responding to emergency calls or when in immediate pursuit of an actual or suspected violator of the laws of the State of Georgia or of the ordinances of the City of Macon: Provided, however, that all such emergency vehicles shall observe the limitations imposed by the ordinances of the City of Macon at all times other than those specified in this paragraph, and this provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the public streets of the City of Macon, nor shall it protect the driver of any emergency vehicle from the consequences of reckless disregard of the safety of others. 82-1101. Observance required. All pedestrians and operators or persons in charge of all vehicles are required to observe the following signals displayed by the electric traffic signal system when in operation. 82-1102. Red light. When the red light is displayed all vehicular and pedestrian traffic must stop. 82-1103. Green light. When the green light is displayed all vehicular and pedestrian traffic must move forward. 82-1104. Amber light. When the amber light is displayed it is for the purpose of permitting pedestrians and vehicles already in the intersection of streets to clear the intersections, and denotes the change of direction in the movement of traffic."

It thus appears that the Mayor & Council of the City of Macon enacted an ordinance which excepted "emergency vehicles when responding to emergency calls," from speed ordinances of the city; but this exception had a provision in it that did not relieve the driver of an emergency vehicle from driving with due regard to the safety of others, nor protect the driver from the consequences of reckless disregard of the safety of others. There-

fore, it seems reasonable that the mayor and council realized that, to except police vehicles on emergency calls from speed limitations, there had to be a specific exemption, and it is a logical deduction that the mayor and council realized that, to exempt such vehicles from the duty of stopping at red traffic lights, required a specific exemption, which the mayor and council did not want to give for fear of the dangers that would be attendant thereon.

Whether or not a police officer while driving a police vehicle when in performance of emergency duty has to stop when the traffic signal light displayed toward him is red, seems to be a question of first impression in this State. In Vol. 1, Part 2, Blashfield's Cyclopedia of Automobile Law, 738, § 802, the author says: "Whether or not favored vehicles may disregard traffic light signals depends primarily upon provisions of the controlling statutes and ordinances. It has been held that a grant of a right of way to such vehicles did not entitle them to disregard traffic lights." At p. 747 in § 808, this author says: "Moreover, the mere fact that ambulances may have a legal right of way over other vehicles on the highway, in the absence of an exception in their favor, does not give them the right to violate the speed laws, or requirements that stops be made before entering certain streets. Conversely, an exemption of ambulances from speed limitations, where no reference is made to traffic signals, does not authorize ambulance drivers to disregard traffic lights."

In Virginia Transit Company v. Tidd, 194 Va. 418 (73 S. E. 2d 405), where a police officer was sued because he ran through a red traffic light at an intersection and had a wreck, the court said: "Our next inquiry is whether there are any provisions in the Code dealing with traffic lights which make a specific exception for drivers of police vehicles. The answer is that there is none. Code, § 46-203, insofar as it is applicable to this case provides as follows: '. . . Red indicates that traffic then moving shall stop and remain stopped as long as the red signal is shown. Green indicates that traffic shall then move in the direction of the signal and remain in motion as long as the green signal is given.' . . Conway contends that a proper interpretation of Code, § 46-241 creates an exception to § 46-203 and permits a police officer to drive through an intersection against a

red light. Section 46-241 of the Code reads as follows: 'Upon the approach of any police or fire department vehicle, giving audible signal by siren or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position at or as near as possible and parallel to the right-hand edge or curb, clear of any intersection of highways, and shall stop and remain in such position unless otherwise directed by a police or traffic officer, until the police or fire department vehicle shall have passed. This provision shall not operate to relieve the driver of a police or fire department vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequences of an arbitrary exercise of such right of way.' Nowhere in § 46-241 is there a specific exception as required by § 46-181 which relieves police officers from the duty to comply with § 46-203 relating to traffic signals. If § 46-241 creates an exception to § 46-203, it does so by implication and not by a specific exception. It is argued that if a police car giving an audible signal cannot run through a red traffic light then we would have the ridiculous situation of escaping law violators going joyfully on their way, while the police wait for a green light. But it can just as well be argued to the contrary that the legislature was willing to take a chance on giving violators of the law a head start rather than endanger the lives of those who rely upon the safety of a green light. . . Code § 46-241 applies to all intersections, whether controlled by signal lights or not, and since § 46-203 was construed in the Holland case to mean that a green light was a command to proceed, it must be taken as the legislative view that it is too dangerous to allow a police or fire vehicle to run through a red light on the chance that vehicles proceeding to cross the path of the police or fire vehicle with the green light might not have heard the siren or exhaust whistle signal with the resulting likelihood of accidents. This is exactly what happened in the case at bar. The bus driver said he did not hear the siren although the jury disbelieved him or thought he should have heard it and he proceeded to cross the intersection and the collision resulted. If the police are to be permitted to disregard red traffic lights, this dangerous right must be given by the legislature and not by this court. When it concluded that

the speed laws should not control the operators of certain vehicles under certain circumstances, the legislature enacted Code § 46-216 which permits police officers in the chase or apprehension of violators of the law to exceed the general speed laws. The fact that the legislature saw fit to make a specific exception in this instance is an added reason why no implied exception may be read into § 46-203 in order to permit police officers to run through red lights. . . If the General Assembly had desired to permit drivers of police vehicles, under certain circumstances, to drive through red traffic lights, it would have done so or it can now do so. It is not the function of the court to legislate or to use the office of construction to amend plain statutes. . . Since there is nowhere in the Code a 'specific exception' which excludes police vehicles from the application of the provisions of § 46-203, dealing with traffic lights, that section applies to the driver of the police car in the instant case, and Officer Conway was negligent as a matter of law in failing to stop for the red traffic light at Fourth and Broad Streets."

Cases from other jurisdictions are only persuasive, but the above decision is sound and should be adhered to. It follows that, in the absence of any specific ordinance exempting a police officer from obeying traffic signal lights, the trial court did not err in instructing the jury that, if they found the traffic signal light displayed a red signal toward the officer as he entered the intersection involved, he would be guilty of negligence per se. See *Archer* v. *Johnson, 90 Ga. App.* 418 (83 S. E. 2d 314).

While counsel for both sides have indicated that the outstanding question to be decided was whether a police officer of the City of Macon, while driving a police vehicle when in the performance of emergency duty, was exempted from obeying traffic light signals, still, the court has examined each of the special grounds of the motion for new trial and found them to be without merit.

The evidence though conflicting was sufficient to support the verdict in favor of the defendants.

In the light of what has been held, it becomes unnecessary to pass upon the assignments of error in the cross-bill of exceptions.

*Judgment affirmed on the main bill of exceptions. Cross-bill of exceptions dismissed. Felton, C. J., and Quillian, J., concur.*