**Herman TELFAIR, Plaintiff-Appellant,**

v.

**ZIM ISRAEL NAVIGATION COMPANY, Limited, Defendant-Third-Party Plaintiff-Appellee,**

v.

**LUCKENBACH STEAMSHIP COMPANY, Third-Party Defendant-Appellee.**

**No. 27418.**

United States Court of Appeals, Fifth Circuit.

June 19, 1970.

Rehearing Denied July 22, 1970.

---

Robert Orseck, Miami, Fla., Roger Vaughan, Jr., Wagner, Cunningham & Vaughan, Bill Wagner, Tampa, Fla., for plaintiff-appellant.

Dewey R. Villareal, Jr., John W. Boult, Fowler, White, Gillen, Humkey & Kinney, P. A., Tampa, Fla., for Zim Israel Navigation Co.

James O. Davis, Jr., J. A. McClain, Jr., McClain, Turbiville, and Heller, Tampa, Fla., for Luckenbach S.S. Co.

Before WISDOM, GEWIN, and AINSWORTH, Circuit Judges.

WISDOM, Circuit Judge.

Seas Shipping Company v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, extended the warranty of seaworthiness to longshoremen. Ryan Stevedoring Company v. Pan-Atlantic S.S. Corporation, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, shifted the liability to the stevedore when it breaches the warranty of workmanlike service. In

this longshoreman (Telfair)—shipowner (Zim Israel)—stevedore (Luckenbach) case, Telfair complains of the court's granting a new trial which resulted in a much lower verdict than the verdict in his first trial. We review, first, the district court's decision to grant a new trial because it had originally withheld from the jury the shipowner's defense of contributory negligence and, second, its conclusion that the stevedore breached its warranty of workmanlike service. We affirm the district court's judgment.

## I.

On May 4, 1966, Herman Telfair, "header" (foreman) of a longshoreman gang, slipped on a ladder while descending into the hold of the Mazal, a ship owned by Zim Israel Navigation Company, Limited. The injury required first a cartilege removal and then, because of arthritis coupled with the torn meniscus and operation, a knee joint fusion or arthodesis, permanently disabling Telfair from work as a longshoreman. The screws in his knee and joint-stiffening produced chronic back problems which eventually will cause disc problems.

In December 1966, Telfair sued Zim Israel in a Florida state court for negligence and unseaworthiness, alleging that he had slipped on grease on an access ladder. Zim Israel removed the case to federal district court and filed a third party complaint against the stevedore company, Luckenbach Steamship, for indemnity. Both Zim Israel and Luckenbach argued that Telfair had been contributorily negligent.

At the close of all the evidence, the district court granted Telfair's motion for a directed verdict on the issue of contributory negligence. The jury found that Zim Israel was not negligent, but awarded Telfair $133,385 for the Mazal's unseaworthiness. The district court entered judgment March 27, 1968. Two months later, the court granted Zim Israel's motion for a new trial (timely filed), finding "that there was sufficient evidence to have permitted the

jury to consider the issue of the contributory negligence of the plaintiff".

At the second trial, the jury awarded Telfair $50,000. The district court denied Telfair's motion for a new trial. The court also entered judgment in favor of Zim Israel and against Luckenbach on the third-party claim. Telfair and Luckenbach appealed.

## II.

■ The precedent is longstanding in this Court that

A motion for new trial is addressed to the trial judge's discretion. He may grant a new trial if he thinks he has committed error; * * * The exercise of his discretion is not ordinarily reviewable on appeal, though a failure to exercise discretion, or an abuse of it, may be corrected.

Marsh v. Illinois Central Railroad Company, 5 Cir. 1949, 175 F.2d 498, 500; see Stewart v. Texas & Pacific Railway Company, 5 Cir. 1960, 278 F.2d 676, 678. Indeed, "[i]n few, if any situations is the discretion of a trial judge broader than in granting a new trial". Willitt v. Purvis, 5 Cir. 1960, 276 F.2d 129, 132. Here the district court initially removed the issue of contributory negligence from the jury, believing there was no evidence on which to submit it. Prompted by Zim Israel's motion, however, the district court upon further consideration concluded that he should have allowed that issue to go to the jury. Consequently, he granted the motion for a new trial.

■ In diversity cases, the question whether sufficient evidence is presented to send a case to the jury is controlled by federal standards in this Circuit. Boeing Company, v. Shipman, 5 Cir. 1969, 411 F.2d 365, 368–370. Boeing directs that a "mere scintilla of evidence" will not prevent a directed verdict, but "if there is substantial evidence opposed to the motions", "in the light and with all reasonable inferences most favorable to the party opposed to the motion", then the issue should prop-

erly be submitted to the jury. Here, Beam, the first longshoreman to descend the ladder "slipped a little bit" but did not fall. Telfair, had he been watching, could have seen him slip as did one of the other longshoremen. Telfair was not watching, however, because he climbed onto the ladder while the first longshoreman was still descending. The seven men who followed Telfair also descended without incident. Testimony shows that Telfair warned them of his accident. But several other individuals used the ladder that afternoon without warning. Although the ladder had not been cleaned, they suffered no mishap. We do not say that contributory negligence was a strong defense. We decide only whether the district court abused its discretion in granting a new trial because it had granted a directed verdict on contributory negligence. We conclude that there was no abuse of discretion.

### III.

 The district court deferred decision on the indemnity claim until the conclusion of the second trial. The court then held that Luckenbach had breached its warranty of workmanlike service and thus prompted the Mazal's unseaworthiness. Among other things, the district court specifically found that the first longshoreman to descend the ladder slipped but did not fall, noticed grease on his shoe and on the ladder, yet wrongfully failed to warn Telfair. Luckenbach, in its brief, "agrees that if Beam, the first longshoreman to descend the ladder, actually saw grease on the ladder and had sufficient time to warn Telfair, who was immediately behind him, but failed to do so, there would be an adequate basis under applicable law to hold the stevedore liable for indemnity to the shipowner". But Luckenbach attempts to persuade us to reject the district court's credibility determinations in this "shifting, conflicting, and obviously unreliable testimony". *Id.*

There is no doubt that Beam's story varied from deposition to first trial to second trial. But we are unable to say that the district court accepted the wrong version. And Beam's inability to keep the story straight need not require the conclusion that all versions were erroneous. In short, regardless of our views of the evidence, "[w]e do not retry the case. We may determine only whether the findings pass muster under the clearly erroneous concept of F.R. Civ.P. 52(a), 28 U.S.C.A." Smith v. United States, 5 Cir. 1961, 287 F.2d 299, 301.

> It is well settled that in order for a reviewing court to set aside findings of fact by a trial court sitting without a jury, it must be clearly demonstrated that such findings are without adequate evidentiary support in the record, or were induced by an erroneous view of the law, and the burden of showing that the findings are clearly erroneous is on the one attacking them.

Chaney v. City of Galveston, 5 Cir. 1966, 368 F.2d 774, 776. Although Luckenbach has perhaps come closer than most, it has not met that burden.

We affirm the judgment of the district court.